IN THE MATTER OF THE ESTATE OF ROBERT BROWN, DECEASED.

*Will — when an estate in remainder is vested — when it is not divested by the subsequent death of the legatees, the children of the life tenant, before the latter's death.*

A testator after giving to each of his four sons and their respective heirs, executors, administrators and assigns forever, the one tenth part or share of his estate, gave and bequeathed to each of his six daughters, naming them, the rent, interest and income of one of the said tenth parts or shares, for and during the term of her natural life. The will then proceeded as follows : "And, upon the death of any or either of my said daughters, I give, devise and bequeath unto such child or children as my said daughters so dying shall have or leave living at their decease, and to the heirs and assigns of such child or children forever, as tenant in common, one part or share of my said estates, that is to say, the children of my said daughters, to have the part or share whereof their mother receives the rent and income during her life."

*Held*, that the children of a daughter took a vested remainder in fee in the share of their mother, and that the estate so acquired was not divested by their subsequent death during the life of the mother.

APPEAL from an order made at a Special Term confirming the report of a referee.

*James A. Deering*, for Henry Burden, guardian, and others, appellants.

*Alexander Melhado*, for Wood D. Loudon and others, respondents.

*Turner, Lee & McClure*, for Farmers' Loan and Trust Company.

*George H. Bell*, for Maria T. Loudon.

BRADY, J. :

Edward H. Loudon, Marie Terese Bird and Wood D. Loudon, grandchildren of one Robert Brown, deceased, and the surviving

children of Maria Loudon, who died intestate on the 4th of May, 1882, and who was the daughter of the said Robert Brown, applied to this court for an order directing the Farmers' Loan and Trust Company to distribute unto and amongst them, according to their right, title and interest therein, respectively, all moneys and property out of a certain administrator fund to which they were entitled under the will of their grandfather.

The appellants, namely, Edward Loudon, Henry Burden Loudon, Clara Estella Evans, wife of Robert Evans, the children of William Jacklin Loudon, deceased, and who died on the 9th of February, 1874, intestate, all of whom are infants and grandchildren of Maria Loudon, the daughter of Robert Brown, as already stated, presented their petition, alleging that the proceeding already mentioned had been taken in reference to the administrator fund without notice to them, and that an order of reference had been made, and asking that they might be allowed to come in and to participate in the proceeding mentioned; and an order was thereupon made declaring them to be parties to the proceeding, the concession having been made in open court that they were the persons they represented themselves to be.

The claims of these persons respectively grows out of the seventh clause of the will of Robert Brown, which, so far as it affects the question, is as follows:

"And I do hereby give and bequeath unto each of my said sons, Robert, William, Edward and Jameson D., and to their heirs, executors, administrators and assigns forever, one part or share thereof, being four shares in the whole. I give and bequeath unto each of my six daughters, viz.: Ann (wife of Sebra Ely), Catherine (wife of Charles L. Clussman), Sarah (wife of Samuel B. Fleming), Maria (wife of William Loudon), Emeline and Louisa, for and during the term of their natural lives, respectively, the rent, interest and income of one other part or share of my said estates (subject nevertheless as aforesaid), being the six remaining shares. And upon the death of any or either of my said daughters, I give, devise and bequeath unto such child or children as my said daughters so dying shall have or leave living at their decease, and to the heirs and assigns of such child or children forever, as tenants in common, one part or share of my said estates, that is to say, the children of my

said daughters to have the part or share whereof their mother received the rent and income during her life."

The referee who was selected to conduct the proceeding mentioned, reported as follows:

*First.* That Edward H. Loudon, Marie Terese Bird and Wood D. Loudon, are grandchildren of Robert Brown, deceased, and are children of Maria Loudon, deceased.

*Second.* That said Maria Loudon was a daughter of Robert Brown, the testator herein, that she died intestate in this city May 4, 1882, leaving her surviving four children, to wit, Edward H. Loudon, Milton C. Loudon, Marie Terese Bird and Wood D. Loudon, all of full age.

*Third.* That prior to July 1, 1882, Wood D. Loudon became and now is the assignee of all the right, title and interest of the above named Milton C. Loudon in and to his share and portion of the several funds held by the Farmers' Loan and Trust Company as administrator and trustee herein.

*Fourth.* That prior to the commencement of these proceedings the petitioners applied to the Farmers' Loan and Trust Company, as trustee and administrator of said funds, for their shares and portions of the said funds so held by said company, and that payment was refused by said company on the sole ground, to wit, that said company had been advised that said Maria Loudon had grandchildren whose parents died before the death of said Maria Loudon, which said grandchildren might, under the will of said Robert Brown, be entitled to the share which their parent, to wit, William J. Loudon would have taken had he survived his mother the said Maria Loudon.

*Fifth.* That William J. Loudon, a son of Maria Loudon, died in this city about the year 1872, leaving a daughter Marie Terese Loudon (now residing at Tarrytown, New York, and of full age) by his first wife now deceased, and two children by a second wife, which said second wife and two children were living at the time of the death of the said William J. Loudon.

*Sixth.* Whether the children of the said William J. Loudon, by his second wife, are now living, the proofs offered before me do not show. I am not able to report their names and residences. And it is upon these facts that the appeal rests.

The referee, in his opinion, arrived at the conclusion that the testator intended to and did limit his devise and bequest to the child or children of each daughter, living at her decease. And this result necessarily excluded the children of William J. Loudon from any participation in the fund mentioned, for the reason that he died in 1872, and consequently was not living at the time of the death of his mother. This conclusion of the referee is based upon a construction that the will clearly designates the object in the testator's mind, and he says that the clause properly considered may be read stated:

"I wish each of my six daughters to have the income of one-tenth of my estate during life. When any one of them shall die, leaving living child or issue, such child or children shall take absolutely the share from which their mother derived an income." And this reading led him to the conclusion stated. And this view of it was sustained by the learned judge presiding at the Special Term when application was made for the confirmation of the report, the learned judge stating that he was satisfied with the reasons assigned by the referee, and in reference to the language of the clause applicable to the subject under consideration, said further, that in his judgment the addition (after the words "shall have") of the words "or leave" was simply to emphasize the testator's meaning. He further said: "Viewing the sentence grammatically, there can be no doubt as to the proper construction. The result is the same if grammar be disregared in the effort to reach the intention. For it is plain that the testator did not use the word 'children' in such a sense as to embrace 'grandchildren.'" And the learned justice declared that the more he read the entire language, the more he was convinced that the testator intended to confine his bounty to those children who survived their mothers.

It is quite evident that the opinion of the referee made a decided impression upon the learned justice, and influenced him, as was natural, in considering the question he was called upon to determine. It is thought, however, that the referee and the learned justice have both adopted an erroneous view of the object and design of the will.

It is equally evident, from the disposition of the rest, residue and remainder of his property made by the testator by the seventh clause, that he intended to divide his property into ten equal shares, four

of which were given to his sons and six of which were given to his daughters named, one of whom was Maria, the grandmother of the appellants ; and that the share which was thus given to each one of his daughters was to be divided between the children of such daughters or their heirs, whether such children were living at the death of the mother or not, and that intention is manifest from the language of the clause, as follows :

"And upon the death of any or either of my said daughters, I give, devise and bequeath unto such child or children as my said daughters so dying shall have or leave living at their decease, and to the heirs and assigns of such child or children forever ;" that is to say, upon the death of any one of the daughters, the testator devised and bequeathed the share to such child or children as the daughters so dying should have.

This language necessarily embraces the issue of all the children of such daughter and the words which follow, " or leave living at their decease," do not, it is thought, emphasize the testator's meaning that the gift was to the children living at the mother's decease. The use of the disjunctive " or " does not accomplish that result. The conjunction " and " is necessary. If the testator had said " such child or children as my said daughters so dying shall have and leave living at their decease," the emphasis suggested would exist. The language employed in effect creates two classes of persons, namely, such children as the daughter should have or leave living, and this would embrace the heirs of a child who died before the daughter as well as those of a child living at her decease, and thus provide for all. If the opposite construction be adopted then the children of a daughter living at the time of the mother's death would take the property to the exclusion of those of her children whose death preceded her own. The testator in disposing of his property in the manner in which he did, did not mean this. He meant that the child of each daughter and her heirs, whether the immediate issue was living or not, should participate in the share of his daughter, and hence the language not only " shall have " but " to their heirs and assigns," and also the language " to the heirs and assigns of such child or children," that is, the children that the daughter shall have. But in a further provision in explanation of his devise and bequest he said : " That is to say, the children of my said daughters to have

FIRST DEPARTMENT, MARCH TERM, 1883.

the part or share whereof their mother received the rent and income during her life;" and this latter clause is wholly unqualified and unconditional. The testator declares by it that the children his daughter shall have shall be entitled to have and receive the share of which the mother received the rent and income.

The only embarrassment encountered, as already seen, in the consideration of this question arises from the use of the words to which reference has been made, " or leave living at their decease." But they may, for the reason assigned, be eliminated, and are therefore of no absolute value in the effort to discover the intention of the testator, or may be regarded as subservient to the broader view accomplished by the words "shall have," and to the declaration subsequently made, by way of explanation, that the children of his daughters were to have the part and share of which the mother received the income during life.

The guiding star in the construction of all wills is the intention of the testator. If that can be developed and rendered certain beyond reasonable doubt it is to be adopted, and it is not necessary that any cases illustrative of that proposition should be cited. It is a perfectly well established rule.

The history of controversies with regard to wills seems to demonstrate it to be of rare occurrence that the clauses about which there is a contest are precisely alike, and hence it is very difficult exactly to illustrate from the adjudged cases the propriety of a construction adopted or an intention declared, although it may be that the cases in some respects can be utilized. It has been held, for example, that the words " such child or children " are not necessarily limited to the immediate offspring, but embrace grandchildren, where the other portions of the will show such to be the intention of the testator, or where such a view is necessary to carry into effect his design as manifested from a consideration of the will and its various provisions (*Prowitt* v. *Rodman*, 37 N. Y., 42; *Scott* v. *Guernsey*, 48 id., 106; *Lawrence* v. *Hebbard*, 1 Bradf., 252; *Bowne* v. *Underhill*, 4 Hun, 130; *Coles* v. *Brown*, 4 Sandf. Ch., 123); although this proposition is neither more nor less than a repetition of the other, namely: that the intention is to control where it can be ascertained, and it is not·in violation of some rule of law.

The words "shall have," disconnected from the words "or leave

living at their decease," mean to beget' or bear, as young; to produce as a child. According to the authorities, Webster and Worcester, and as suggested by the learned counsel for the appellants, the language of the clause, considered with reference to the object and design of the testator, may be read as follows: "I give, devise and bequeath to such child or children as my said daughters, so dying, shall beget, bear and produce." And this would make it, as it is thought it was intended, an absolute devise to such children, and an interest in the remainder was therefore absolutely vested by the words in the children, just as soon as they were born. William J., the father of the appellants, was one of the children which the testator's daughter Maria had, and the right to the future enjoyment of a part of the estate was therefore vested in him, and the vested remainder inured to the benefit of his child necessarily as a legal sequence. This result is in harmony with the legal proposition that in construing wills the heirs shall not be disinherited, unless the intention to accomplish that end is clearly expressed. (*Scott* v. *Guernsey, supra*.)

Entertaining these views, and having no doubt of their correctness, and with due deference to the opinion of the learned justice in the court below, it is thought the order appealed from should be reversed and the appellants declared to have the right to participate under the provisions of the will in such portion of the fund to which their father, if living, would be entitled.

DAVIS, P. J., and DANIELS, J., concurred.

Ordered accordingly.